UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROGER DUFRESNE,

                                    Plaintiff,

v.                                                          5:12-CV-00049
                                                            (MAD/TWD)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         MICHAEL J. TELFER, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street
Syracuse, NY 13202

HON. RICHARD S. HARTUNIAN                 MONIKA K. PROCTOR, ESQ.
United States Attorney for the            Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 MARY ANN SLOAN, ESQ.
Social Security Administration            Acting Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the Honorable

Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18

of this Court which sets forth the procedures to be followed when appealing a denial of Social

Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons

discussed below, it is recommended that this matter be remanded to the Commissioner for further

proceedings.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently forty-six years old with a date of birth of June 23, 1966. (T. at 84, 94.[1])

The highest grade of education he completed was either sixth or ninth grade. *Id.* at 36, 103. He

testified he was able to read and write "somewhat fairly good." *Id.* at 27.[2] The claimant last worked

in a restaurant as a cook in 2003 and left the job because he "[d]idn't get a long with the boss." *Id.* at

99. Incarceration time has also prevented him from working. *Id.* at 36. Plaintiff alleges disability

due to illiteracy, sleep apnea, asthma, bad back and knees, and high blood pressure. *Id.* at 98.

Plaintiff applied for disability insurance benefits and SSI on September 15, 2008, alleging a

date of onset of August 27, 2008. *Id.* at 84. The application was denied on November 18, 2008. *Id.*

at 43. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 50. The

---

[1]     Page references preceded by "T." are to the Administrative Transcript (*see* Dkt.
No. 10.)

[2]     Other evidence in the transcript indicates conflicting information about his
literacy abilities. Disability Form SSA-3368 indicates he can read and understand English, and
write more than his name in English, yet he states "illiterate" as one condition that limits his
ability to work. (T. at 98.) Plaintiff's NYS Office of Temporary and Disability Assistance
Function Report, filled out by his girlfriend, indicates that he "can't read or write, or count very
good." *Id.* at 106, 110. Plaintiff testified one reason he applied for benefits in 2000 was because
he had trouble with reading and writing. *Id.* at 38. The Disability Field Office interviewer noted
Plaintiff's "[s]ignature was basically a scribble." *Id.* at 96.

hearing was held on July 20, 2010. *Id.* at 22. On August 10, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.* at 9-18. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 23, 2011. *Id.* at 1. Per extension granted by the Appeals Council, Plaintiff commenced this action on January 12, 2012. (Dkt. No. 1; *see also* T. at 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920. "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

3

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at

986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## III.    THE ALJ'S DECISION

The ALJ made the following findings with regard to the period from Plaintiff's alleged onset date of August 27, 2008:

1.      The claimant did not engage in substantial gainful activity since August 27, 2008.  (T at 11.)

2.      Plaintiff had the following "severe" impairments: mild degenerative changes of the lumbar spine, obesity, and "other unspecified impairment of the right hip."  *Id.*

3.      Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.* at 14.

4.      Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work, with the basic mental demands of competitive, remunerative, unskilled work pursuant to SSR 85-15.  *Id.*

5.      Plaintiff had no past relevant work.  *Id.* at 17.

6.      Considering Plaintiff's age, education, work experience, and RFC, Plaintiff was not disabled under the framework of the Medical-Vocational Guidelines.  *Id.*

## IV.     THE PARTIES' CONTENTIONS

Plaintiff makes the following claims:

1.      The ALJ erred by failing to develop the record.  (Dkt. No. 13 at 10-15.[3])

2.      The ALJ erred in failing to classify Plaintiff's asthma as a severe impairment.  *Id.* at 15-17.

3.      The ALJ's RFC finding is not supported by substantial evidence and is the product of legal error.  *Id.* at 17-20.

4.      The ALJ erred by failing to properly assess the Plaintiff's credibility.  *Id.* at 21-23.

4.      The ALJ's Step 5 determination is not supported by substantial evidence and is the product of legal error.  *Id.* at 23-24.

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed.  (Dkt. No. 14.)

_____

[3]      Page numbers in citations to the parties' briefs refer to the page numbers assigned by the Court's electronic filing system.

## V.     DISCUSSION

### A.     The Administrative Record

1.     <u>Treating Sources</u>

Plaintiff's treating provider records consist of St. Joseph's Family Medicine Center

("SJFMC") covering the periods from October 22, 2003, to December 6, 2006, and from February 9,

2009, to February 12, 2012.  (T. at 146-156, 215-233.)  The earlier dates consist of medical treatment

by two providers for allergies, asthma, high blood pressure, left ankle pain and swelling,

gastroesophogeal reflux disease, and obesity.  *Id.* at 146-156.  The more recent dates of treatment

show he received medical care from one SJFMC provider, Dr. Thomas Cummings, who treated him

for low back pain, right hip pain, obesity, asthma and high blood pressure.  *Id.* at 215-233.  The

record does not contain a functional assessment from any provider at SJFMC.

From February 27, 2008, to October 15, 2008, Plaintiff was seen at the Poverello Health

Center,[4] ("PHC").  The treatment notes of PHC during that time frame show treatment primarily for

asthma and allergy symptoms, smoking cessation efforts, tooth pain and medication refills.  *Id.* at

158-164.  The record also contains a "Physician's Medical Report" from PHC dated January 7, 2009.

*Id.* at 213.  The report notes a diagnosis of chronic low back syndrome, sleep apnea, uncontrolled

hypertension and obesity and provides estimated functional limitations that Plaintiff was very limited

(1-2 hours per day) in his ability to walk, stand, sit, push, pull or bend.  *Id.* at 213-214.

2.     <u>Consultative Sources</u>

Plaintiff was examined for a psychiatric evaluation on October 27, 2008 by Kristen Barry,

---

[4]     PHC is also referenced in the record as Assumption Church and Franciscan
Northside Ministries.  (T. at 126, 128, 164, 208.)

Ph.D.  *Id.* at 165.  She notes that Plaintiff did not know the highest grade level he completed and that he was in special education classes because of learning delays.  *Id.*  "He appeared cognitively limited and had difficulty providing information."  *Id.* at 166.  She found his attention and concentration "appeared impaired, given cognitive delays."  *Id.* at 167.  He could do counting, but "he struggled with even simple calculations and could not do serial 3s."  *Id.*  She opined that he "[w]ill not be able to manage his own funds."  *Id.* at 168.  She estimated his intellectual functioning "[t]o be in the deficient range."  *Id.* at 167.  She found he could "[f]ollow and understand very simple instructions. He may be able to perform some simple tasks independently."  *Id.* at 168.  She noted he had "[s]ignificant cognitive delays and may have difficulty with more complex tasks" and with "handling stress."  *Id.*  She found he had a personality disorder and that his "[a]llegations are found to be consistent with examination results."  *Id.*

Internal medicine consultant Kalyani Ganesh, M.D., also examined Plaintiff on October 27, 2008.  *Id.* at 170.  Dr. Ganesh's exam revealed Plaintiff had a normal gait, he could heel-toe walk, he needed no help changing for the exam or getting on and off the exam table, and he rose from a chair without difficulty.  (T. at 171.)  Straight leg raising tests were negative, his lower extremity strength was 5/5, he had full range of motion in his upper extremities and mild flexion limitations in his hips and knees.  *Id.* at 172.  His lumbar spine flexion and extension were 90 degrees and 10 degrees respectively, but his lateral flexion and rotation were full.  *Id.*  Pulmonary function testing showed moderate airways restriction.  *Id.* at 172, 176.  Dr. Ganesh opined Plaintiff had no gross limitation for sitting, standing or the use of upper extremities and "mild limitation to walking, climbing, lifting, carrying, pushing, and pulling."  *Id.* at 173.

On November 13, 2008, state agency psychiatric reviewer, R. Altmansberger, M.D., noted

Plaintiff to have a personality disorder and a substance addiction disorder. *Id.* at 182. Dr. Altmansberger found Plaintiff moderately limited in, among other things, the ability to: (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods and perform activities within a schedule; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) respond appropriately to changes in the work setting. *Id.* at 202-203. Dr. Altmansberger opined Plaintiff had "[t]he ability for simple work in a low contact setting." *Id.* at 204.

A physical RFC was completed on November 13, 2008, by D. Wilson, who appears to be a non-physician disability analyst. *Id.* at 196. Exertional limitations for Plaintiff were noted as occasionally lifting 20 pounds, frequently lifting 10 pounds, standing walking and sitting 6 hours in an 8 hour day, and unlimited pushing and pulling. *Id.* at 197. No postural, manipulative, visual or communicative limitations were noted. *Id.* at 198-199.

### B.    Development of the Record

Plaintiff argues that the ALJ did not properly develop the record by (1) failing to obtain a treating physician's opinion of Plaintiff's RFC, specifically an opinion from Dr. Cummings regarding Plaintiff's function-by-function limitations; (2) failing to recontact Poverello Health Center ("PHC") to resolve a conflict and/or ambiguity; and (3) failing to order a consultative intelligence examination. (Dkt. No. 13 at 8.)

In response, the Commissioner counters that the ALJ properly evaluated and weighed the medical evidence in determining Plaintiff's RFC and had no obligation to obtain an opinion on Plaintiff's function-by-function limitations from treating physician Dr. Cummings. (Dkt. No. 14 at 13.) The Commissioner also argues that the ALJ had no duty to recontact PHC. *Id.* at 15. The

9

Commissioner further contends that a consultative intelligence exam was not necessary because the record is complete and fully developed such that the ALJ properly determined Plaintiff's mental functional capacity even without such an exam. *Id.* at 16-17. The Court agrees with the Plaintiff in part and finds that treating source Dr. Cummings should have been contacted for a functional report and a consultative intelligence exam should have been ordered.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted). If a gap exists in the administrative record then the plaintiff has not been afforded a full and fair hearing and the ALJ has failed in his or her duty to develop the administrative record. *Hankerson v. Harris,* 636 F.2d 893, 897 (2d Cir. 1980). Such a gap exists in the record when the ALJ bases a conclusion on evidence which is absent from the record or not fully developed within the record. *See, e.g., Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996). This duty, however, is not without limit. *See Guile v. Barnhart,* No. 5:07-CV-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). If all of the evidence received is consistent and sufficient to determine whether a plaintiff is disabled, further development of the record is unnecessary, and the ALJ may make his or her determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Thus, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

1.  Treating Physician Opinion of RFC

Plaintiff first argues that because there is no RFC from a treating physician, the ALJ was under a duty to contact Dr. Cummings at SJFMC to obtain a function-by-function analysis of Plaintiff's impairments. (Dkt. No. 13 at 10.) Plaintiff asserts that "the ALJ erred in not recontacting

Dr. Cummings due to his long treatment history with Plaintiff" *Id.* at 13. Dr. Cummings treated the Plaintiff for approximately one year from February 2009 to February 2010 for back and right hip pain, asthma symptoms, high blood pressure, and obesity. (T. at 215-234.) There is no detailed functional assessment from Dr. Cummings and no clear indication the ALJ contacted him to obtain such an assessment. Instead, the ALJ relied in part on the consultative opinion of Dr. Barry, and on the opinion of Dr. Ganesh, both of which were based upon their examinations of Plaintiff as set forth above. *Id.* at 165, 170. As also outlined above, the record also contains the mental RFC opinion of state agency psychiatrist Dr. Altmansberger. *Id.* at 202. All assessed Plaintiff's functional limitations. However, the ALJ gave little weight to Dr. Barry's diagnosis of personality disorder, and little weight to Dr. Altmansberger's finding of a personality disorder and substance addiction disorder. *Id.* at 13-14. He gave considerable weight to Dr. Ganesh's opinion, but the opinion was not specific as to Plaintiff's functional limitations. *Id.* at 16, 170. To the extent the ALJ relied on the findings set forth in the RFC assessment completed by disability analyst D. Wilson, that report indicates Plaintiff did not have any communicative limitations which is inconsistent with the mental reports of Dr. Altmansberger and Dr. Barry. *Id.* at 16, 165, 182, 200. Moreover, the ALJ gave both of those opinions "little weight" in their assessment finding Plaintiff suffered from a personality disorder, yet there is no other opinion evidence in the record to the contrary. *Id.* at 13-14.

The lack of a medical source statement from a treating physician will not make the record incomplete, *see* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6), provided that the ALJ made his decision based on sufficient and consistent evidence. Because the record was not consistent or sufficiently strong for the ALJ to make a disability determination, he should have recontacted Dr. Cummings to request a functional assessment under the rules in place at the time of the decision. 20 C.F.R §§

404.1512(e)(2), 416.912(e)(2) (2010) (amended March 26, 2012). Therefore, on remand, the ALJ

shall contact Dr. Cummings for a detailed opinion of Plaintiff's functional abilities regarding the

period of time in question.

2.     Recontacting Poverello Health Center

Plaintiff next argues that the ALJ failed to recontact PHC for clarification of the identity of the

medical provider who completed a "Physician's Medical Report" which included functional

limitations. (Dkt. No. 13 at 13; *see also* T. at 213.) The ALJ noted that the "[a]ssessment from

someone at the Poverello Health Center contains an illegible name[5] and signature" and then afforded

the opinion "little weight" because "[i]t is not clear who the person signing the form is and the nature

of his treating relationship with the claimant." (T. at 16.) The ALJ further indicates "[t]he opinion is

not substantiated by competent medical evidence of record." *Id.*

The Court is unpersuaded that the ALJ erred in this respect. With regard to Plaintiff's

physical abilities, the PHC report is inconsistent with and unsupported by not only the encounter

notes from PHC, but also other treatment notes in the record. Therefore, the opinion from Dr. Martin

of PHC would not be controlling because it is not supported by substantial evidence and the ALJ's

decision to give it little weight is not error. 20 C.F.R. § 416.927(c)(2). For example, Dr. Ganesh

found Plaintiff had no gross limitation for sitting or standing based upon an examination of Plaintiff

which showed he had a normal gait, he could heel-toe walk, he needed no help changing for the exam

or getting on and off the exam table, and he rose from a chair without difficulty. (T. at 171.) Straight

---

[5]     The license number of the medical professional is legible ("License No. 137277")
on the record in question. (T. at 214.) The Court takes judicial notice that, according to New
York State's Office of Professions online verification of licensed professionals, the number is
assigned to David Joseph Martin, M.D., who has been licensed to practice medicine by the State
of New York since February 9, 1979. *See* http://www.NYSED.gov/COMS/OP001/OPSCR2.

leg raising tests were negative, his lower extremity strength was 5/5, he had full range of motion in his upper extremities and mild flexion limitations in his hips and knees. *Id.* at 172. His lumbar spine flexion and extension were 90 degrees and 10 degrees respectively, but his lateral flexion and rotation were full. *Id.* By contrast, the report from PHC indicated Plaintiff was very limited (1-2 hours per day) in his ability to walk, stand, sit, push, pull or bend. *Id.* at 214. The treatment notes of PHC from February 27, 2008, to October 15, 2008, however, show treatment primarily for asthma and allergy symptoms, smoking cessation efforts, tooth pain and medication refills. *Id.* at 157-164. None of the PHC records document physical exams of Plaintiff's musculoskeletal system such as the spine, hips, knees or other upper and lower body joints. *Id.* Based upon all of the above, the ALJ did not err in affording little weight to the functional report from the PHC physician.

       3.     <u>Consultative Intelligence Examination</u>

     An ALJ has the discretion to order a consultative intelligence exam to develop the record when the ALJ determines that he or she cannot get the information needed to form a conclusion based solely on the medical sources within the record. 20 C.F.R. §§ 404.1519a(a) and 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue,* No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

     In this case, Plaintiff argues that the ALJ failed to develop the administrative record because he did not order a consultative intelligence evaluation when there was "[e]vidence in the record indicating the existence of a cognitive impairment." (Dkt. No. 13 at 15.) The record contains conflicting evidence as to the Plaintiff's intellectual functioning. He testified the highest level of education he completed was 6th grade. (T. at 27.) The Disability Report - Adult - Form SSA-3368

indicates he completed the 9th grade, but attended special education classes.  *Id.* at 103, 104.  That

report also indicates he can read and understand English, and write more than his name in English.

*Id.* at 98. There is no information in the record indicating that he ever obtained a GED.  Plaintiff's

NYS Office of Temporary and Disability Assistance Function Report form was filled out by his

girlfriend, and indicates that he "can't read or write, or count very good." *Id.* at 106, 110.  Plaintiff

testified one of the reasons he applied for benefits in 2000 was because he "[h]ad trouble with my

reading and writing...." *Id*. at 38.  The Disability Field Office interviewer noted Plaintiff's

"[s]ignature was basically a scribble." *Id.* at 96.

Consultative examiner Kristen Barry, Ph.D., comments that Plaintiff did not know the highest

grade level he completed and that he was in special education classes because of learning delays.  (T.

at 165.)  "He appeared cognitively limited and had difficulty providing information." *Id.* at 166.  She

found his attention and concentration "appeared impaired, given cognitive delays." *Id.* at 167.  He

could do counting, but "he struggled with even simple calculations and could not do serial 3s." *Id.*

She opined that he "[w]ill not be able to manage his own funds." *Id.* at 168.  She estimated his

intellectual functioning "[t]o be in the deficient range." *Id.* at 167.   The ALJ acknowledged  "Dr.

Barry did not administer formal tests of intelligence" yet he found Plaintiff had a "low IQ."  (T. at 13-

14.)  He gave Dr. Barry's diagnosis of a personality disorder "little weight" and did not find any

severe mental impairment based upon other information in the record. *Id.*

The Court agrees with Plaintiff that a consultative intelligence test should have been obtained

because Dr. Barry opined Plaintiff had a cognitive impairment and informally estimated his

intellectual functioning to be in the "deficient range" with "cognitive delays". *Id.* at 167-168.  Other

evidence in the record is conflicting as to his reading, writing and calculation abilities.  Since the

record contains evidence of a cognitive impairment, with conflicting evidence as to his abilities, the ALJ should have ordered a consultative intelligence test in order to clarify Plaintiff's intelligence level and properly render a decision on whether Plaintiff's mental impairment is severe. Based on the above, the Court finds that further development of the record is necessary regarding a consultative intelligence exam to properly gauge the Plaintiff's mental limitations, if any. On remand, the ALJ shall obtain a consultative intelligence opinion of the Plaintiff's intellectual abilities.

### C.     Plaintiff's Asthma

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 414.921(b). Basic work activities which are relevant for evaluating the severity of a physical impairment include the physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *Id.*; *see also Pickering v. Chater*, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c). The severity analysis does no more than "screen out de minimis claims," and where the disability claim rises above the de minimis level, then further analysis is warranted. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

Plaintiff argues his asthma causes more than minimal functional limitations. (Dkt. No. 13 at 17.) The record shows Plaintiff subjectively complained to the consultative examiners that he has trouble breathing and the "usual triggers" for his asthma are "walking and activity." (T. at 165, 170.) However, the medical records indicate that Plaintiff's asthma was well-controlled with the use of medications such as Advair and albuterol inhalers. For example, Plaintiff had only one emergency room visit for asthma, which occurred after he had run out of his regular medication. (T. at 30-31.) Dr. Cummings described Plaintiff's asthma symptoms as "minimal" in February of 2009, and respiratory examinations were within normal limits in the February, July, August and September of 2009 and January of 2010 visits with Dr. Cummings. *Id.* at 215, 219, 222, 228, 231. Plaintiff continued to smoke. *Id.* at 227, 234. Although consultative examiner Dr. Ganesh found Plaintiff had a moderate restriction on pulmonary function testing, the complete examination revealed no functional limitations related to Plaintiff's asthma. *Id.* at 172, 173, 176.

Based upon the above, the ALJ's finding in the step two analysis that Plaintiff's asthma is not severe is supported by substantial evidence.

### D. Determination of Plaintiff's Residual Functional Capacity

Plaintiff claims the ALJ erred in determining her RFC because he afforded Dr. Ganesh's opinion considerable weight when it was "vague and incomplete;" he gave weight to a disability analyst's report; and he substituted his judgment for Dr. Barry's judgment. (Dkt. No. 13 at 19-22.) The Commissioner argues that the ALJ's RFC finding is properly supported in the record. The Court agrees with the Plaintiff.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is

informed by consideration of a claimant's physical abilities, mental abilities, symptoms including

pain, and other limitations that could interfere with work activities on a regular and continuing basis.

*Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional

capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§

404.1545(a), 404.1569a, 416.945(2), 416.969a. Non-exertional limitations or impairments, including

impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R.

§§ 404.1545(b), 404.1569a; 416.945(b), 416.969a*; see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e). When making an RFC determination, an ALJ must specify those functions that the

claimant is capable of performing; conclusory statements concerning his or her capabilities, however,

will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citation omitted). Further, "[t]he RFC assessment

must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

observations)." S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.). An administrative RFC finding can

withstand judicial scrutiny only if there is substantial evidence in the record to support each

requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citation omitted).

1.   Opinion of Dr. Ganesh and the RFC Report of Disability Analyst

Plaintiff claims the ALJ erred in attributing considerable weight to the opinion of Dr. Ganesh

because the opinion was "vague and incomplete." (Dkt. No. 13 at 19.) Dr. Ganesh found Plaintiff

had no limitation "[t]o sitting, standing, or the use of upper extremities. *Mild* limitation to walking,

lifting, carrying, pushing, and pulling" (emphasis supplied). (T. at 173.) Dr. Ganesh's opinion did

not assess Plaintiff's limitations, if any, with handling objects, yet the ALJ found Plaintiff could

perform a full range of light work.  *Id.* at 14.  The Court finds Dr. Ganesh's opinion is insufficient to support the ALJ's findings.  "To the extent that the ALJ relied on the findings made by the consultative examiners, the ALJ was not permitted to infer, without additional information, that plaintiff was able to perform a limited range of light work based upon the examiners' vague findings."  *Dickson v. Comm'r of Soc. Sec.*, No. 1:04-CV-1296 (NAM/RFT), 2008 WL 553208, at *8 (N.D.N.Y. Feb. 27, 2008) (*citing Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (holding that consultative examiner's use of the terms "moderate" and "mild," without additional information, did not permit the ALJ to make the necessary inference that the plaintiff can perform the exertional requirements of sedentary work) (citation omitted)).

Likewise, the ALJ erred by reliance on the RFC in the record by the Disability Analyst D. Wilson when he stated the "[d]isability analyst found that Dr. Ganesh's opinion is consistent with the ability to perform light work."  (T. at 16; *see also* T. at 196.)  In further explanation, the ALJ noted "although the disability analyst is not a medical source, the disability analyst's legal conclusion that the claimant can perform at least light work constitutes some evidence that supports Dr. Ganesh's opinion."  *Id.*  The analyst's conclusion that Dr. Ganesh's opinion deems Plaintiff's functional capacity in the range of light duty work on the one hand, and the analyst's light duty work determination "supports" Dr. Ganesh's opinion on the other hand, is circular reasoning by the ALJ that does not constitute substantial evidence of Plaintiff's RFC.  In addition to the evidentiary problems attendant to the vagueness of Dr. Ganesh's opinion outlined above, to the extent that the ALJ apparently depended on the RFC assessment completed by D. Wilson, the disability analyst who appears to be a non-physician, the Court cannot conclude the ALJ's RFC determination is supported by substantial evidence.  Remand is appropriate for a proper evaluation of Plaintiff's RFC.

18

2.    Opinion of Kristen Barry, Ph.D.

Plaintiff also maintains that the ALJ substituted his judgment for the opinion of Dr. Barry

when he gave "lesser weight" to her opinion that Plaintiff suffers from a personality disorder with

antisocial features.  (Dkt. No. 13 at 21; *see also* T. at 16, 168.)  Dr. Altmansberger, state agency

psychiatrist, also opined that Plaintiff had antisocial features and moderate limitations in a variety of

social interaction settings and in the social aspects embodied in abilities required for sustained

concentration and persistence.  (T. at 202-203.)  Although Plaintiff testified that he had mental health

treatment when he "was younger" and there is an indication in the record that in March of 2008 he

sought treatment through St. Joseph Hospital Health Center's Comprehensive Psychiatric Emergency

Program, the record does not contain any reports of mental health treatment or assessments other than

Dr. Barry's consultative report and the state agency psychiatrist's report.  *Id.* at 33, 101, 165, 202.

The ALJ's decision is not supported by substantial evidence because he erred in giving "little weight"

to Dr. Barry's opinion and "little weight" to the findings of the state agency psychiatrist since those

were the only mental health assessments in the record.  *Id.* at 13-14.  The ALJ failed to properly

explain his reasoning for affording "little weight" to these findings.  Therefore, the matter should also

be remanded for a proper weighing of the opinions of Dr. Barry and Dr. Altmansberger.

**E.    Plaintiff's Credibility**

In arriving at his determination, the ALJ found Plaintiff's "[m]edically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence, and limiting effects of these symptoms are not

credible."  *Id.* at 15.  Plaintiff argues the ALJ failed to apply the appropriate legal standards in making

this determination.  (Dkt. No. 13 at 23.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV. 9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and S.S.R. 96-7p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. S.S.R. 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce the symptoms, the claimant's symptoms cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his or her symptoms are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not

substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929.

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, No. 96 Civ. 9718 (MBM), 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ noted that Plaintiff suffered from medically determinable impairments that could reasonably be expected to cause her alleged symptoms thus meeting the first step of the two-step analysis. (T. at 15.) The ALJ nonetheless rejected Plaintiff's complaints as not being credible, finding they were unsubstantiated by clinical evidence in the record, including reports from his treating providers, and Plaintiff's activities. *Id.* Thus, it was incumbent on the ALJ to then assess the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929, which he did. The ALJ reviewed and discussed the medications Plaintiff took, the treatment he received, his symptoms, daily activities, and

measures taken to relieve the symptoms. (T. at 15-16.) Thus, the ALJ's findings are entitled to deference and the Court declines to recommend remand on this ground.

## F.     ALJ's Step Five Analysis

Plaintiff argues that the ALJ erred in failing to elicit the opinion of a vocational expert because his ability to perform a full range of light work is limited. (Dkt. No. 13 at 25.) Defendant argues that a vocational expert was not necessary because Plaintiff's nonexertional limitations did not present significant limitations. (Dkt. No. 14 at 26.)

Because the Court is remanding to allow the ALJ to further develop the record and to reevaluate Plaintiff's RFC, the Court directs remand on this issue as well. Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[6] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small*

---

[6] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).

*v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72.

Dated: March 8, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge